PRESTON BERMAN
2600 Center St. NE
Salem, OR 97301-2669
Telephone: 503.947.2704

Plaintiff, appearing Pro Se

FILED 25th NOV '24 09:12 USDC-ORP

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| **PRESTON BERMAN**, on behalf of themselves and a class of those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>**OREGON**; **OREGON STATE HOSPITAL**; **SARA WALKER**, in her official capacity as interim superintendent of the Oregon State Hospital; **SEJAL HATHI**, in her official capacity as Director of the Oregon Health Authority,<br><br>Defendants. | Case No: 6:24-CV-1968-MK<br><br>TEMPORARY RESTRAINING ORDER |

## INTRODUCTION

1. This action seeks a Temporary Restraining Order (TRO) to address Defendants' ongoing violations of Title II of the Americans with Disabilities Act (ADA) and the Due Process Clause of the Fourteenth Amendment, which are subject to federal court review. Plaintiff, Preston Berman, brings this motion on behalf of himself and similarly situated individuals residing at Oregon State Hospital (OSH), alleging that OSH and the Oregon Health

PAGE 1 - TEMPORARY RESTRAINING ORDER

Authority (OHA) have subjected residents to unnecessarily restrictive and segregated treatment conditions, contrary to federal law.

2. Plaintiff respectfully requests that this Court issue a TRO to prevent further harm to Plaintiff and similarly situated individuals, ensuring that OSH and OHA comply with federal mandates to provide services in the least restrictive setting.

## FACTUAL BACKGROUND

3. Plaintiff Preston Berman has been under the jurisdiction of the Psychiatric Security Review Board (PSRB) since 2010 due to a Guilty Except for Insanity (GEI) adjudication. At OSH from 2010-2015, 2019-2020, and 2021-Present. Throughout this period, Plaintiff has received treatment from OSH and has demonstrated an ability to function in less restrictive environments, including the Salem Cottage program and the Bridges Minimum Security SRTF (2015) before the recent restrictions. These programs allowed residents to engage in therapeutic activities, community interactions, and unaccompanied on-grounds access, fostering autonomy and responsibility.

4. Despite Plaintiff's demonstrated progress and the therapeutic intent of his GEI adjudication, OSH has imposed increasingly restrictive conditions on him and other residents, including:

    a. Closure of the Salem Cottage Program: This program provided a structured, community-like environment essential for rehabilitation. Its closure has forced Plaintiff and similarly situated individuals into highly restrictive, institutional settings.

    b. Restrictions on Community Outings and Engagement: (10/25/24) Outings have been limited to "drive-through only" destinations or venues devoid of "sharps"

(interpreted to include items as innocuous as paintbrushes or standard pens, coffee pots, ceramic cups, spoofs, forks), curtailing residents' access to meaningful community interactions. As of November 15, 2024, the sharps pass restriction rule has been modified to require approval of a mitigation plan for each proposed location where individuals may have access to "sharps" during outings. This applies even to individuals who have undergone multiple layers of assessment, including Short-Term Assessments of Risk and Treatability (START) violence risk assessments (VRA), and have already been granted privileges to leave the secure perimeter by Risk Review. Despite these comprehensive evaluations and approvals, residents are still subjected to highly restrictive measures that resemble conditions typically reserved for maximum-security settings. OSH no longer allows residents to go to outside meetings AA, NA, Dual Diagnosis Anonymous, or other therapeutic community outings, Church of their choosing, or other places where OSH patients deemed ready to place in the community, could actually interact with the community.

c. Suspension of Empowerment Center Activities: The Empowerment Center, once a resource for practicing real-life skills, has been indefinitely closed, denying residents a critical outlet for rehabilitation.

d. Implementation of Excessive Security Protocols: Security screenings, pat-downs, and limits on personal freedom are applied uniformly, disregarding individual risk assessments and rehabilitation needs.

e. Loss of Privileges and Removal of Personal Items: OSH has revoked sealed mail privileges, eliminated personal technology (TVs, DVD players, and computers), and

will soon restrict cash access, visitation in the hospital and in the community on outings to meet with family members at a restaurant etc, have been placed on hold on and off for extended periods of time, in person visitation with family in the community is currently suspended, which diminishes residents' independence and autonomy and family connections.

5. These policies are applied to all residents without individualizing care for those that are ready to place in the community. The average wait time currently for PSRB residents not requiring HLOC releases is 200 days.

6. These practices violate the ADA's mandate to provide services in the most integrated setting and infringe upon residents' Due Process rights to treatment aligned with their individual needs and autonomy.

## LEGAL STANDARD

7. Under Title II of the ADA, individuals with disabilities are entitled to receive services in the "most integrated setting appropriate" to their needs, a standard clarified by *Olmstead v. L.C.*, 527 U.S. 581 (1999). Furthermore, the Fourteenth Amendment's Due Process Clause safeguards individuals from unnecessary and prolonged institutionalization. Federal courts have held that individuals have a constitutionally protected liberty interest in receiving treatment that supports community reintegration and respects their autonomy. A TRO is appropriate when immediate relief is necessary to prevent irreparable harm to the plaintiff and similarly situated individuals, and there is a substantial likelihood of success on the merits.

8. A Temporary Restraining Order (TRO) is a legal mechanism designed to preserve the status quo and prevent ongoing irreparable harm until the court can hold a full hearing on

PAGE 4 - TEMPORARY RESTRAINING ORDER

the merits of the case. The U.S. Supreme Court has recognized this principle, stating that the purpose of a TRO is to "preserve the status quo and prevent irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Brotherhood of Teamsters*, 415 U.S. 423, 439 (1974).

9. The TRO is particularly crucial in cases where the harm alleged is irreparable, meaning it cannot be adequately remedied by monetary damages or other forms of compensation. Courts have consistently emphasized that maintaining the last uncontested status preceding the dispute ensures fairness in the legal process and prevents one party from gaining an undue advantage.

10. In this case, the requested TRO seeks to maintain the current rights and conditions of Plaintiff and similarly situated individuals until a hearing can be held. The immediate relief requested aims to prevent irreparable harm to Plaintiff's autonomy, dignity, and mental health, which are being jeopardized by Defendants' increasingly restrictive policies. These actions threaten to undermine Plaintiff's statutory and constitutional rights under the Americans with Disabilities Act (ADA) and the Due Process Clause of the Fourteenth Amendment.

11. Issuance of a TRO in this context is not only appropriate but necessary to protect the fundamental rights at stake and ensure that the court can adjudicate the underlying issues without the undue influence of ongoing harm or further deterioration of the Plaintiff's condition.

## GROUNDS FOR RELIEF

12. Plaintiff meets the criteria for a TRO as follows:

    A. Likelihood of Success on the Merits: Defendants have consistently violated federal law by denying Plaintiff and similarly situated individuals the right to treatment in the least restrictive setting. The ADA mandates integration and prohibits unnecessary segregation of individuals with disabilities, while the Due Process Clause protects against arbitrary and excessively restrictive confinement.

    B. Irreparable Harm: Plaintiff and similarly situated residents continue to suffer irreparable harm due to OSH's restrictive policies, which undermine their autonomy, impede their rehabilitation, and prolong institutional dependency. Deprivation of fundamental rights constitutes irreparable harm per established precedent.

    C. Balance of Equities: The harm to Plaintiff and similarly situated individuals outweighs any administrative inconvenience to OSH and OHA. Compliance with federal law will enhance, rather than impede, OSH's rehabilitative mission.

    D. Public Interest: Issuing a TRO supports the public interest by enforcing compliance with federal protections under the ADA and the Fourteenth Amendment, ensuring that disabled individuals receive appropriate and lawful treatment.

## RELIEF REQUESTED

13. Plaintiff respectfully requests that this Court issue a Temporary Restraining Order enjoining Defendants as follows:

    A. **Appointment of a Neutral Expert**: Appoint a neutral expert, qualified in forensic mental health and disability rights, to advise the Court on effective methods for

reducing unnecessary institutionalization at Oregon State Hospital (OSH) and ensuring compliance with the Americans with Disabilities Act (ADA) and the Due Process Clause of the 14th Amendment. This expert shall work with OSH and the Oregon Health Authority (OHA) to develop and implement strategies for providing care in the least restrictive setting appropriate to the needs of OSH residents at all 3 care levels, Minimum, Medium, and Maximum.

B. **Rollback of Recent Restrictions:** Order Oregon State Hospital (OSH) to immediately:

   a. Reopen the Empowerment Center (Closed October 25, 2024) and reinstate access to patient-paid vocational rehabilitation jobs.

   b. Restore recovery-focused outings, including visits to sit-down restaurants with silverware and knives, museums, theaters, movie theaters, community gyms, and other venues conducive to therapeutic integration, AA/NA Meetings, visits with families in the community and at On Grounds Houses (for those eligible).

   c. Lift restrictions on access to personal items, including basic plastic cooking tools, and restore access to cooking groups across OSH.

C. **Review and Adjustment of Institutional Policies:**

Issue an order directing the Oregon State Hospital (OSH) to review and revise all institutional policies that impose blanket restrictions on access to personal items, technology, and community engagement opportunities. The revised policies must be individualized and narrowly tailored to address specific concerns, ensuring they are the least restrictive means necessary to achieve legitimate institutional objectives.

D. **Ensure Compliance with the Americans with Disabilities Act (ADA):** Require OSH to implement policies and practices that fully comply with the ADA by providing equal access to services, accommodations, and opportunities for residents with disabilities.

E. **Ensure Compliance with the Fourteenth Amendment – Due Process Clause:** Declare that the current blanket restrictions violate residents' rights to due process under the Fourteenth Amendment and order OSH to implement individualized assessments before restricting access to personal items, technology, or community engagement opportunities.

F. **Immediate Restoration of Services**: Order Defendants to restore recently suspended programs and privileges critical to therapeutic progress, including:
   a. Haircuts, painting groups with paintbrushes, pottery classes, and other rehabilitative activities.

G. **Other Relief**: Grant such further relief as the Court deems necessary and appropriate to ensure the rights of Plaintiff and similarly situated individuals are upheld and that OSH's practices align with state and federal law, the ADA, and constitutional protections.

## NOTICE TO DEFENDANTS

Plaintiff hereby certifies that they monitor the docket daily. Despite submitting this case on November 1, 2024, as of November 15, 2024, the case has not been received or posted on the docket, Clerk advised sending documents and payment again. Plaintiff intends to notify Defendants immediately via email upon docketing of the case, consistent with Federal Rule of Civil Procedure 65(b)(1). Once the Clerk issues the signed summons, they will be promptly served on the Defendants, and a notice of service will be filed to document this action.

## CONCLUSION

For the reasons stated above, Plaintiff respectfully requests that the Court grant this motion and issue a Temporary Restraining Order. Such relief is necessary to prevent further harm to Plaintiff and similarly situated individuals, ensure Defendants' compliance with federal law, and protect the fundamental rights of disabled individuals under OSH's care.

DATED: November 18, 2024.

                                                        Respectfully submitted,

                                                        *s/ Preston Berman*
                                                        PRESTON BERMAN
                                                        2600 Center St. NE
                                                        Salem, OR 97301-2669
                                                        Telephone: (503) 947-2704

                                                        Plaintiff, appearing Pro Se