FILED 4 DEC '24 10:32USDC-ORP

PRESTON BERMAN
2600 Center St. NE
Salem, OR 97301-2669
Telephone: 503.947.2704

Plaintiff, appearing Pro Se

## UNITED STATES DISTRICT COURT

### DISTRICT OF OREGON

#### EUGENE DIVISION         6:24-cv-1968-MTK    gd

| | |
|---|---|
| **PRESTON BERMAN**, on behalf of themselves and a class of those similarly situated | Case No. 6:24-cv-01127-MTK |
| Plaintiff, | |
| v. | NOTICE OF FILING SUPPLEMENTAL EXHIBITS REGARDING COMPLAINT |
| **OREGON**; **OREGON STATE HOSPITAL**; **SARA WALKER**, in her official capacity as interim superintendent of the Oregon State Hospital; **SEJAL HATHI**, in her official capacity as Director of the Oregon Health Authority, | |
| Defendants. | |

TO THE COURT AND ALL PARTIES OF RECORD:

PLEASE TAKE NOTICE that Plaintiff, Preston Berman, hereby files the following

supplemental exhibits in support of the Complaint filed on November 25, 2024. These

exhibits provide additional evidence relevant to the claims outlined in the Complaint and

further demonstrate violations of Title II of the Americans with Disabilities Act (ADA),

ORS 426.385(p), and ORS 430.210(2).

PAGE 1 -  NOTICE OF FILING SUPPLEMENTAL EXHIBITS REGARDING COMPLAINT

**List of Supplemental Exhibits:**

1.  Exhibit 8: Policy 4.010 - Patient Funds

    a.  **Violation**: Policy 4.010 prohibits all residents from engaging in stock
        market investments, categorizing it as gambling. This blanket restriction
        violates the ADA by denying residents equal access to financial
        opportunities without individualized assessments. It also infringes upon
        residents' rights under ORS 426.385(p) and ORS 430.210(2) to dispose of
        property and enter contractual relationships.

2.  Exhibit 9: Policy 6.030 - Electronic Device and Internet Access

    a.  **Violation**: Policy 6.030 imposes severe restrictions on internet use, barring
        activities like financial investing or business development. These limitations
        deny residents opportunities to gain financial literacy and practical skills for
        future independence, violating the ADA's mandate for reasonable
        accommodations and fostering independence.

3.  Exhibit 10: OAR 309-106-0015 - Visitation of Patients and Residents in State
    Institutions

    a.  **Violation**: Section (4)(c) imposes burdensome requirements on visitors with
        disabilities, such as mandatory documentation for medical devices and
        pre-approval for service animals. These restrictions are discriminatory under
        the ADA, which requires reasonable modifications to ensure equitable
        access for individuals with disabilities. The rule also exceeds ADA

guidelines regarding service animals, which limit inquiries to the necessity of the animal and its trained tasks.

DATED: November 27, 2024.

Respectfully submitted,

s/ *Preston Berman*
PRESTON BERMAN
2600 Center St. NE
Salem, OR 97301-2669
Telephone: (503) 947-2704

Plaintiff, appearing Pro Se

## CERTIFICATE OF SERVICE

I certify that on November 27, 2024, I served the foregoing NOTICE OF FILING

SUPPLEMENTAL EXHIBITS REGARDING COMPLAINT upon the parties hereto by the

method indicated below, and addressed to the following:

ELLEN F. ROSENBLUM                \_\_\_ HAND DELIVERY
Attorney General                         X\_ MAIL DELIVERY
Department of Justice                \_\_\_ OVERNIGHT MAIL
100 SW Market Street               \_\_\_ TELECOPY (FAX)
Portland, OR 97201                  \_\_\_ E-MAIL
Telephone: (971) 673-1880       \_\_\_ E-SERVE
Fax: (971) 673-5000

Attorney for Defendants

DATED: November 27, 2024.          Respectfully submitted,

                                    *s/ Preston Berman*
                                    PRESTON BERMAN
                                    2600 Center St. NE
                                    Salem, OR 97301-2669
                                    Telephone: (503) 947-2704

                                    Plaintiff, appearing Pro Se

# EXHIBIT 8

# OREGON STATE HOSPITAL

## POLICY

| | | |
|---|---|---|
| **SECTION 4:** | Fiscal | **POLICY: 4.010** |
| **SUBJECT:** | Patient Funds | |
| **POINT PERSON:** | Chief Financial Officer | |
| **APPROVED:** | Sara Walker, MD | **DATE: NOVEMBER 19, 2024** |
| | Interim Superintendent | |

| **SELECT ONE:** | ○ New policy | ◉ Minor/technical revision of existing policy |
|---|---|---|
| | ○ Reaffirmation of existing policy | ○ Major revision of existing policy |

## I. PURPOSE AND APPLICABILITY

A. This policy defines the parameters for cash handling, requesting cash, transfer of cash from one entity to another, restrictions related to cash, and procedures related to cash & cash transfers at Oregon State Hospital (OSH).

B. This policy defines parameters, use, and procedures related to the cashless system.

C. This policy applies to all patients and staff outlined in the policy.

## II. POLICY

A. A patient may draw on their personal trust account.

   1. Upon discharge of the patient, non-restricted funds on deposit in the patient's trust account shall be returned to the patient or forwarded per Social Worker's request via the "Continuing Care Discharge Plan" found in the electronic health record.

   2. Any funds remaining on the patients' cashless card shall be returned to their trust account prior to discharge for inclusion with the discharge funds.

B. Trust Accounts

   1. Each patient must be informed of the availability of a trust account and the methods for depositing and withdrawing funds during the admission process. Written orientation materials must be provided upon admission.

2. Patients, a legal guardian, or payee that has financial power of attorney must either accept or decline the optional trust account in writing using the "Trust Account Application" (available on unit or from warehouse) per Procedures A. Patients or a legal guardian or payee that has financial power of attorney may accept this option later if originally declined.

   a. For patients who are admitted with funds on hand, a trust account must be opened for the deposit of any funds in their possession.

3. Patients may choose to utilize an account outside the facility. Their legal guardian or payee with financial power of attorney is responsible for establishing and coordinating accounts with a financial institution outside of OSH.

4. If OSH opens a trust account on behalf of a patient and a patient does not complete the trust account application process, funds are held in the trust account until patient discharge.

5. It is mandatory that a trust account be opened:

   a. For any patient participating in the Vocational Rehab program, as payroll is only processed through direct deposit to the patient's trust account; and

   b. For any patient receiving cash by mail or in person. If a patient has not elected to open a trust fund account, OSH shall open a trust fund account for them.

6. Transfers from the trust account to the Cashless Card require a completed Trust Application and a completed request using the Consent to Withdrawal form (available on unit or from warehouse).

C. Handling Funds

1. Funds received by mail must be placed in a trust account. Patients must work with friends or family to facilitate deposit into a private account. Any funds received will be deposited into the patient's trust account until an outside account is available.

2. Unauthorized currency and funds shall be handled per OSH policy 8.044, "Contraband and Prohibited Items."

3. All funds received from patients, their relatives, or donors shall be appropriately accounted for in the manner prescribed by ORS 179.530 and handled per Procedures B.

4.  Staff must complete the "Personal Funds Receipt" form (OSH-STK-05745) whenever funds are accepted from a patient or donor. This form can be located on unit or through the business office.

5.  Only authorized staff may handle patient funds.

    a.  Any staff withdrawing or holding any patient's currency is individually responsible for the safekeeping and accurate accounting of the currency.

    b.  Excluding staff that must handle patient funds in the course of their regular job duties at OSH, all staff involved with withdrawal, transport, and/or disbursement of patient funds must participate in the money-handling training program provided by the Business Office before they are considered an authorized staff for the purposes of this policy.

6.  Unit Nurse Managers, UAs or their designee must provide names and signatures of money-handling staff as well as staff designated to approve exception transactions to Business Office.

7.  The OSH Business Office Manager must approve any exceptions to the authorized staff list.

D.  Accounting and Use of Funds

    1.  The Superintendent delegates authority for proper handling of the treasury account to the Chief Financial Officer.

    2.  The electronic health record is the accounting system platform through which patient trust accounts are tracked.

        a.  All trust account transactions are completed through this platform.

        b.  All trust accounting reports are printed from this platform.

    3.  Patients are only allowed 30 dollars value on their Cashless Card and one book of stamps (20 stamps) in their possession at any one time. For property that exceeds these parameters, refer to OSH policy 8.044 "Contraband and Prohibited Items."

    4.  Treatment care plans (TCPs) may require that patient currency exceed OSH financial parameters for off-grounds planned patient spending.

        a.  Requests for fund withdrawal exceeding OSH financial parameters must follow the exception process in Procedures C.

    5.  Interdisciplinary teams may establish more restrictive individualized financial parameters for a patient. Any more restrictive financial parameters for a patient

must be included in the patient's TCP and not compromise the patient's rights per OSH policy 7.005 "Patient Rights" and applicable state and federal laws.

6. If patients are granted use of funds via check and a check created by funds drawn from a patient's trust account is not received by the payee, the patient may, after a period of 30 days request the check to be voided and the funds redeposited into the trust account. This request must include a completed "Lost Check Affidavit" [MSC 138A] (available on the OWL) per Procedures C.

E. All purchases must adhere to OSH policy, laws, regulations, and treatment care plan restrictions including, but not limited to:

     i. OSH policy 8.037, "Patient Property and Valuables: Handling and Storage;"

     ii. OSH policy 6.029, "Risk Review and Privileges,"

     iii. OSH policy 6.011, "Treatment Care Planning;"

     iv. OSH policy 6.030, "Electronic Device and Internet Access;"

     v. OSH policy 7.002, "Media Access for Patients;"

     vi. OSH policy 7.001, "Mail and Packages for Patients;"

     vii. OSH policy 8.044, "Contraband and Prohibited Items."

F. Patients shall not exchange funds with other patients except through the patient -to-patient transfer process per procedures C.

G. Patients are not permitted to gamble. Stock market investment and trading is considered gambling for the purposes of this policy.

H. Pooling of patient funds is prohibited.

I. OSH follows all applicable regulations, including federal and state statutes and rules; Oregon Department of Administrative Services (DAS), Shared Services, and Oregon Health Authority (OHA) policies; and relevant accreditation standards. Such regulations supersede the provisions of this policy unless this policy is more restrictive.

J. Staff who fail to comply with this policy or related policy attachments or protocols may be subject to disciplinary action, up to and including dismissal.

**III. DEFINITIONS**

A. "Currency" for the purpose of policy means paper or coins issued by the United States Treasury. This term is interchangeable with "cash" or "money".

B. "Cash Equivalents" are instruments readily convertible to cash such as endorsed checks, etc. This definition includes phone cards or l the value of first-class postage stamps in excess of one book (20 stamps). This also includes the balance on a facility use only cash card and stored value cards.

C. "Cashless Card" is the AVRO card provided by Oregon State Hospital for patient use while at Oregon State Hospital to replace the use of cash.

D. "Disbursement' means cash withdrawals requested by and delivered to patients or used to reimburse a hospital expense incurred at the request of a patient, patient-to-patient transfers, or check requests by patients.

E. "Donor" in this policy means a person leaving funds for a patient. A donor may include, but is not limited to, a patient visitor, friend, or family member.

F. "Exceptional Circumstances" means any transaction request that reasonably deviates from the prescribed policy parameters.

G. "Exceptions/ Exceptional Transaction" means cash or cash equivalent withdrawal from patient trust account for the purchase of items from outside vendors or certain purchases from the Oregon State Hospital markets

H. "Funds" includes, but is not limited to, all government-issued currency, cashier's checks, money orders, traveler's checks, checks drawn on the Treasurer of the United States, personal checks, debit or credit cards, phone cards, virtual or electronic payment methods, or other negotiable instruments. Funds also is as defined in Oregon Revised Statute 179.510.

I. "Pooling" for the purposes of this policy means to aggregate or group funds from multiple patients.

J. "Regular business hours" means Monday through Friday 7:30 a.m. to 4 p.m., excluding holidays.

K. "Staff" includes employees, volunteers, trainees, interns, contractors, vendors, and other state employees assigned to work at Oregon State Hospital (OSH).

L. "Trust Account Numbers" in this policy mean the patient electronic health record number assigned to the patient at admission to OSH.

M. "Unauthorized Currency" means paper money and coins in the possession of a patient in an amount or in a location not authorized by OSH.

N. "Unauthorized funds" means funds in patient possession that are contrary to OSH financial parameters, including amount or value, storage, and use parameters. Examples include, but are not limited to:

1. Paper money and coins in the possession of a patient in an amount or in a location not authorized by OSH.

2. Virtual or electronic payment methods in the possession of a patient that are not approved by OSH or are valued in excess of approved amounts.

| | | |
|---|---|---|
| **SUBJECT:** Patient Funds | | **POLICY NUMBER: 4.010** |
| **DATE:** November 19, 2024 | | **PAGE 6 OF 7** |

O. "Virtual or electronic payment method" for the purposes of this policy may include, but is not limited to, virtual or electronic debit cards, virtual or electronic credit cards, virtual or electronic gift cards, virtual or electronic tradable goods or services, and cryptocurrency.

P. "Visitor" means an individual who is not an OSH staff member or another patient and who OSH has authorized to enter a designated visiting area in the hospital to meet with a patient.

IV.  **PROCEDURES**

Procedures A    Establishing a Trust Account

Procedures B    Receiving Funds

Procedures C    Fund Withdrawals, Transfers and Exception Requests


V.  **RELATED OSH FORMS**

"State of Oregon Official Receipt" (OSH-BOF-0107),

"Trust Account Application" (OSH STK-11988),

"Personal Funds Receipt" (OSH-B.O. 4-10/2005),

"Consent to Withdrawal of Funds from Patient Trust Accounts" (OSH-STK-12326),

"Patient Money Log & Tally" (OSH-STK-75028).

"Lost Check Affidavit" (OSH-STK-75073) [form]


VI.  **RELATED OSH POLICIES AND PROTOCOLS**

1.015 Notarial Services

6.013 Discharge and Conditional Release Planning

6.028 Admissions

6.029 Risk Review and Privileges

6.030 Electronic Device and Internet Access

8.037 Patient Property and Valuables: Handling and Storage

8.026 Visitors

8.044 Contraband

| | |
|---|---|
| **SUBJECT:**  Patient Funds | **POLICY NUMBER: 4.010** |
| **DATE:**    November 19, 2024 | **PAGE 7 OF 7** |

**VII.**   **REFERENCES**

Department of Administrative Services. Oregon accounting manual. Retrieved
from http://www.oregon.gov/das/Financial/Acctng/Pages/OAM.aspx#chapter15.

Oregon Administrative Rule §§ 309-108-0000 — 309-108-0020.

Oregon Administrative Rule § 309-013-0030

Oregon Revised Statute §179.510.

Oregon Revised Statute § 179.520.

Oregon Revised Statute § 179.530.

Oregon Revised Statute § 426.385.

# EXHIBIT 9

# OREGON STATE HOSPITAL

## POLICIES AND PROCEDURES

| | | |
|---|---|---|
| **SECTION 6:** | **Patient Care** | **POLICY: 6.030** |
| **SUBJECT:** | **Electronic Device and Internet Access for Patients** | |

| | | |
|---|---|---|
| **POINT PERSON:** | **CHIEF MEDICAL OFFICER** | |
| **APPROVED:** | **JOHN SWANSON** | **DATE: DECEMBER 20, 2017** |
| | **INTERIM ADMINISTRATOR** | |

## I. POLICY

A. Oregon State Hospital (OSH) supports reasonable patient use of cell phones, computers, tablets, gaming devices, (*i.e.*, "electronic devices") and the internet within parameters established in this policy. OSH also recognizes that in some cases unrestricted and unmonitored electronic device and internet access can create vulnerabilities for patients, health care personnel (HCP), and the public. Therefore, this policy must be read in conjunction with OSH Policy and Procedure 8.044, "Contraband and Prohibited Items," and OSH Policy and Procedure 7.002 regarding patient access to media.

B. Patient access to electronic devices and internet must be guided by this and other applicable policies, by the program in which the patient is being provided treatment, and by the interdisciplinary treatment team (IDT). Patient access to these resources is also guided by the patient's progress in treatment and towards community discharge.

C. This policy applies to electronic devices designated for patient use. Electronic devices used by a patient must be OSH-approved or OSH-issued. All electronic devices must conform to applicable policies, procedures, laws, and regulations.

D. All data stored or viewed on devices under this policy is subject to the provisions of OSH Policy and Procedure 7.002 and applicable copyright requirements.

E. OSH may review and restrict access to electronic devices or internet in cases of device misuse or access to unauthorized media.

1. Any patient-used or patient-owned electronic device may be subject to search at any time.

2. Failure to follow the provisions in the "OSH Internet and Computer Use/Access Contract" or "Cell Phone Contract" (attached), or possession of devices not allowed under this policy may result in search and possible restriction from using the device or data.

| | |
|---|---|
| SUBJECT:  **Electronic Device and Internet Access** | POLICY NUMBER 6.030 |
| DATE:  **December 20, 2017** | PAGE 2 OF 4 |

F.  HCP may not use state-owned or patient-owned electronic devices that fall under this policy except while assisting a patient.

G.  Exceptions to the provisions of this policy are allowable only with IDT and program director support and as approved by the Superintendent or designee.

H.  A HCP who fails to comply with this policy or related procedures may be subject to disciplinary action, up to and including dismissal.

## II. DEFINITIONS

A.  "Electronic device" for the purposes of this policy includes but is not limited to any cellphone, computer, tablet, gaming device, television, smart watch, electronic storage device, portable hotspot, or any similar equipment. In this policy, "electronic device" includes printers.

B.  "Health care personnel (HCP)" for the purposes of this policy means the population of health care workers working in healthcare settings. HCP might include, but is not limited to: physicians, nurses, nursing assistants, therapists, technicians, dental personnel, pharmacists, laboratory personnel, students and volunteers, trainees, contractual staff not employed by the facility, and persons not directly involved in patient care (*e.g.,* clerical, dietary, housekeeping, maintenance).

C.  "OSH-approved electronic device" means an electronic device found appropriate for patient use by the Superintendent or designee.

D.  "OSH-issued electronic device" means an electronic device issued and maintained by OSH or an OSH-approved vendor for use by patients.

## III. PROCEDURES

A.  Cell phones may only be capable of sending and receiving voice calls or text messaging, but not of sending or receiving photographs or videos. No camera, internet access, or other function will be allowed.

1.  IDT approval is required prior to purchasing or using a cell phone. Cell phones must be purchased and issued through an OSH-approved vendor.

2.  Prior to cell phone approval or purchase, each patient must be oriented to and agree to the "OSH Cell Phone Agreement" (see Attachment C).

3.  Each patient is responsible for purchasing and maintaining the cell phone and any services, accessories, or minutes. Cell phone minutes may only be procured through cards. No calling plans, individual or otherwise, are allowed for cell phones.

4.  Cell phones are considered individual personal property, and may not be shared with other patients or HCP.

B. Computer and internet use must be in support of, and may not interfere with, treatment at OSH. Unless otherwise specified in this policy, patients may only use state-owned computers designated for patient use.

  1. The IDT must consider the general availability of computer and internet access in the program and weigh the clinical need for such access against the inherent risks of such access for each patient.

     a. Unless otherwise ordered and documented in the patient's medical record, the level of access must be commensurate with that which is generally available in the program.

     b. Any exception to electronic device access must be reviewed and documented in accordance with provisions for prohibited items in OSH Policy and Procedure 8.044, "Contraband and Prohibited Items".

  2. Prior to use of computer or internet access, each patient must be oriented to and agree to the "OSH Internet and Computer Use/Access Contract" (Attachment B).

     a. Exception may be made by the Springs Program Executive Team (PET) for a patient who would benefit from using computers or internet, but who is found to lack capacity to complete a contract and who is deemed to pose little, if any, danger with such use.

     b. If the Springs PET approves the exception, the patient's IDT must complete the contract for the patient.

  3. If a patient violates the "OSH Internet and Computer Use/Access Contract" (Attachment B) or provisions in this policy, the IDT must review the situation and may restrict or deny the patient's access to computers or internet.

     a. Patient computer or internet restrictions must be included in the treatment care plan, along with goals and interventions to progressively reduce the restrictions.

     b. Repeated damage to the computers may result in a full restriction from computer access.

  4. Any computer that shows signs of tampering or changing in its functionality will be removed.

  5. A patient must have a unique individual user logins. A patient may not distribute or share their individual user log-in.

  6. Each unit nurse manager must identify a HCP as a computer administrator to create user accounts and administer passwords for computers on that unit.

C. Gaming devices allowable under this policy may only be used as outlined in the permission grid (Attachment A). Games must adhere to ratings indicated in OSH Policy and Procedure 7.002.

1. Unless otherwise specifically approved in this policy, only gaming devices that do not permit internet access are allowed at OSH.

    a. For a personal gaming device to be "OSH-approved," that device must be certified internet/WiFi disabled by a source deemed credible by the Superintendent or designee.

    b. Applicable supporting documentation must be presented with the request for a gaming device.

3. Repair for OSH-purchased gaming devices will be the responsibility of OSH. Personal gaming device repair or maintenance is the responsibility of the patient.

D. USB storage devices may be used as storage for data only and may not contain software. The USB may only contain data allowable under the OSH "Internet and Computer Use/Access Contract" (see Attachment B) and OSH Policy and Procedure 7.002.

E. Personal routers and portable hotspots are prohibited.

F   Printing capability is dependent upon specific location (Attachment A). Public access printer/copiers will be made available and maintained by OSH. Ink, paper and maintenance of a patient-owned printer is the individual patient's responsibility.

## IV. ATTACHMENTS

Attachment A     Electronic Devices Access

Attachment B     OSH Internet and Computer Use/Access Contract.

Attachment C     OSH Cell Phone Contract

## V. REFERENCES

OAR §§ 309-108-0000 — 309-108-0020

Oregon State Hospital Policy and Procedure Manual. (2014, May). *Media Access for Patients*, 7.002.

Oregon State Hospital Policy and Procedure Manual. *Patient property and valuables: Handling and storage*, 8.037.

Vocational and educational services department internet use agreement [Vocational and Educational Services form].

OSH POLICY 6.030, "ELECTRONIC DEVICE AND INTERNET ACCESS FOR PATIENTS"

ATTACHMENT A   Electronic Device Access                                          PAGE 1 of 1

| Location | Cell Phone | Computers | Gaming Devices | Printers |
|---|---|---|---|---|
| Harbors Building | No cell phones | No computers | No devices | No printers |
| Archways | No cell phones | No computers | Unit/ public OSH-issued devices | No printers |
| Pathways | No cell phones | 1 public OSH-issued computer per unit | Unit/ public OSH-issued devices | Off-unit printers |
| Springs | OSH-approved cell phones | 1 public OSH-issued computer | Unit/ public OSH-issued devices | On-unit printer |
| Crossroads | OSH-approved cell phones | 3 public OSH-issued computers | Unit/ public OSH-issued devices | Off-unit printer |
| Bridges | OSH-approved cell phones | 1 OSH-issued computer per bedroom | OSH-approved devices | IDT-approved personal printers |
| Junction City | OSH-approved cell phones | 3 public OSH-issued computers | Unit/ public OSH-issued devices or IDT-approved devices | Off-unit printers |

Oregon Health Authority
Oregon State Hospital

## OSH Internet and Computer Use/Access Contract

☐ Patient-Access
   (OSH Filtered Computer)

☐ Computer/Internet
   (Education/Vocational)

☐ Personal Computer

Oregon State Hospital (OSH) supports patients' reasonable use of computers and the Internet. OSH also recognizes that in some cases, unrestricted and unmonitored computer and Internet access can create vulnerabilities for the patients, staff, and the public.

Before using the computer and/or Internet you must agree to abide by the following rules. Your signature and date on this form indicates your agreement to abide by the following expectations:

I agree to not use computers and/or the Internet to:

1. Transmit offensive, threatening, harassing, abusive, or defaming language and/or images.
2. Conduct business or commercial enterprise, engage in commercial activity, or engage in the sale or promotion of any illegal substance.
3. Engage in any gambling, bets, or trading.
4. View, transmit, or download pornographic materials.
5. Violate intellectual property rights by making unauthorized copies of copyrighted, licensed, or otherwise controlled software or data residing on the Internet.
6. Breach copyright and license policies for software (games and programs).
7. Intentionally transmit worms, viruses, or other harmful programs.
8. Access any unauthorized computers, networks, or information systems.
9. "Piggyback" or obtain Internet services off of unauthorized networks.
10. Install software except as permitted for cottage residents.
11. Intentionally alter or damage computer hardware, software, or settings.
12. Invade the privacy of others – contacting people against their wishes.
13. Engage in any illegal or prohibited activity including activity prescribed by specific court order.

I also agree to respect other clients by:

1. Respecting posted computer time limits and sign-in procedures as applicable.
2. Confining computer sounds to headphones at all hours of the day and to abide by any unit curfews.
3. Not keeping any personal information of other persons, without consent, in either stationary or portable storage devices, including, but not limited to, photos, addresses, recordings, patient names and/or numbers.

CONFIDENTIAL: This Information has been disclosed to you from records where confidentiality is protected by State Law (ORS 179.505) and Federal Law (45CFR, Part 164). You are prohibited from making further disclosure without specific written consent of the persons or as otherwise permitted by law.

**ADDRESSOGRAPH**

File:    **Legal**
Thin:    **Do Not Thin**
Form #:  **OHA 76042  MR1 – 08/2011**

Oregon Health Authority                                                               Attachment 2
Oregon State Hospital

- I understand that the use of computers and Internet is a privilege that requires the approval of the IDT.
- I understand that I may have to submit to a review of my computer activities at the request of the IDT.
- I understand that I assume full financial responsibility for Internet services, including fulfilling any contracts as approved in the Cottages.

Violations of the above rules or of OSH Patient Internet Policy 6.030 will prompt an IDT review and will result in the loss or restriction of Internet and/or computer privileges.

I agree to these terms:


_____  _____        _____  _____
Patient Signature            Date           Unit Computer Administrator   Date


_____  _____        _____  _____
IDT Review                   Date           Voc/Ed Specialist             Date



My Password is: _____

Specific Limitations or Restrictions: _____

_____

_____

_____


Comments: _____

_____

_____

CONFIDENTIAL: This information has been disclosed to you from records where confidentiality is protected by State Law (ORS.179.505) and Federal Law (45CFR, Part 164). You are prohibited from making further disclosure without specific written consent of the persons or as otherwise permitted by law.

ADDRESSOGRAPH

File:      **Legal**
Thin:      **Do Not Thin**
Form #:    **OHA 76042  MR1 – 08/2011**

# OSH Cell Phone Agreement

Patient Name: _____    IDT Approval: _____

Unit/Cottage: _____    Date: _____

**Cell phones are a privilege, not a right. Failure to abide by the guidelines for cell phone use may result in the suspension or loss of your cell phone privilege.**

1. Patients must obtain IDT authorization for the cell phone prior to obtaining the cell phone.

2. Cell phones will be purchased through OSH approved vendors only. Cell phones must only be capable of sending and receiving voice and text. No camera, internet access or other function will be allowed.

3. Cell phones must be minutes-style only through use of minutes cards. No calling plans, individual or otherwise are allowed for the phones.

4. Cell phones are not to be taken to the treatment mall. No cell phones on any staff supervised on- or off-grounds activities, unless there is prior approval, on a case-by-case basis.

5. Phones must be on **low volume or vibrate-only at all times,** to reduce noise and disruptions.

6. Cell phone users will be considerate of hours of use, volume of conversation and location of use to minimize possible disruption to other patients. Patients responsible for consistent disruptions with their cell phone use may result in cell phone privilege restrictions, up to and including withdrawal of the privilege.

7. Any reports of telephone use that is harassing, intimidating, illegal, or otherwise considered inappropriate, will result in the immediate suspension of your cell phone privilege, up to and including complete removal of your cell phone.

8. In the event of a clinical hold, it is at the discretion of the IDT whether cell phone privileges are suspended.

9. Your IDT may require you to submit your phone for a review of calls and texts; this may happen randomly, and as needed.

10. All cell phones will be recorded on the patient's property sheets along with the corresponding phone identification, serial number and phone number.

11. Cell phones are the responsibility of their owner. Owner responsibility includes all financial responsibility for the phone, accessories, or services. Loaning a cell phone, selling minutes to peers, or profiting from phone use may result in the loss of the cell phone privilege for those involved.

*I have read and agree to the above requirements for my personal cell phone.*

Patient Signature: _____    Date: _____

# EXHIBIT 10



**OFFICE OF THE SECRETARY OF STATE**
LAVONNE GRIFFIN-VALADE
SECRETARY OF STATE

CHERYL MYERS
DEPUTY SECRETARY OF STATE
AND TRIBAL LIAISON

**ARCHIVES DIVISION**
STEPHANIE CLARK
DIRECTOR

800 SUMMER STREET NE
SALEM, OR 97310
503-373-0701

## PERMANENT ADMINISTRATIVE ORDER

**BHS 28-2024**
CHAPTER 309
OREGON HEALTH AUTHORITY
HEALTH SYSTEMS DIVISION: BEHAVIORAL HEALTH SERVICES

| **FILED** |
|---|
| 11/13/2024 12:21 PM |
| ARCHIVES DIVISION |
| SECRETARY OF STATE |
| & LEGISLATIVE COUNSEL |

FILING CAPTION: VISITATION OF PATIENTS AND RESIDENTS IN STATE INSTITUTIONS

EFFECTIVE DATE: 01/14/2025

AGENCY APPROVED DATE: 11/11/2024

CONTACT: Adina Jennings-Bradshaw
503-421-4788
OSH.Rules@dhsoha.state.or.us

Oregon State hospital
2600 Center St NE B01-242
Salem, OR 97301

Filed By:
Adina Canales
Rules Coordinator

RULES:
309-106-0005, 309-106-0010, 309-106-0015, 309-106-0025, 309-106-0030, 309-106-0035

AMEND: 309-106-0005

REPEAL: Temporary 309-106-0005 from BHS 18-2024

RULE TITLE: Definitions

NOTICE FILED DATE: 09/19/2024

RULE SUMMARY: OAR 309-106-0005 provides definitions for: attorney; contact visit; clergy; direct care staff; forensic patient; gender identity; hospital level of care patient; in-person visit; metal detection screening; minor; OSH property; pat-down; personal search; physical aggression; search; secure perimeter; secure residential treatment facility; security inspection; security reason; security risk; security staff; service animal; virtual visit; visit; and wanding.

RULE TEXT:
As used in these rules:

(1) "Accused Person" or "AP" means the OSH staff or visitor who is the respondent in an investigation for the alleged abuse of a patient under Chapter 419, division 120, of the Orgon Administrative Rules.

(2) "Adult" means an individual that has reached the age of majority as that term is defined in ORS 109.510 and includes an individual under the age of 18 who is legally married.

(3) "Attorney" means any lawyer actively licensed by the Oregon State Bar or other state bar.

(4) "Contact Visit" means that the meeting between the patient and the approved visitor occurs in person without a barrier. There may be limited approved physical contact between patient and the approved visitor, such as a hug at the beginning or ending of the visit.

(5) "Contraband" means any controlled substance, drugs not prescribed to the patient, drugs not prescribed or authorized by OSH, drug paraphernalia, weapons, unauthorized currency or prohibited items.

(6) "Clergy" means any member of the community who is recognized by a religious authority and who has been accepted, oriented, trained, and approved by the Oregon State Hospital Spiritual Care Department.

(7) "Controlled Substance" means a drug or its immediate precursor classified in Schedules I through V under the federal

Controlled Substances Act, 21 USC 811 to 812, as modified under ORS 475.005 and ORS 475.035.

(8) "Cultural Food/Items" means an item that relates to a patient's cultural or ethnic identity.

(9) "Direct Care Staff" means any health care workers, either employed directly or contracted with OSH, who work directly with patients in the hospital, including but not limited to physicians, nurse practitioner, registered nurse, nursing assistants, therapists, and technicians.

(10) "Division" means the Oregon State Hospital Division of the Oregon Health Authority.

(11) "Drug" means:

(a) Substances recognized as drugs in the official United States Pharmacopoeia, official Homeopathic Pharmacopoeia of the United States or official National Formulary, or any supplement to any of them;

(b) Substances intended for use in the diagnosis, cure, mitigation, treatment or prevention of disease in humans or animals;

(c) Substances (other than food) intended to affect the structure or any function of the body of humans or animals, including but not limited to vitamins, supplements, dietary powders, synthetic cathinones, synthetic cannabinoids; or

(d) Substances intended for use as a component of any article specified in paragraph (a), (b) or (c) of this subsection; however, the term does not include devices or their components, parts or accessories.

(12) "Drug Paraphernalia" means all equipment, products and materials of any kind that are marketed for use or designed for use in planting, propagating, cultivating, growing, harvesting, manufacturing, compounding, converting, producing, processing, preparing, testing, analyzing, packaging, repackaging, storing, containing, concealing, injecting, ingesting, inhaling or otherwise introducing into the human body a controlled substance in violation of ORS 475.752 to 475.980.

(13) "Excess Personal Property" means property which cannot be stored in the designated storage in the patient's room or personal storage space on the unit.

(14) "Forensic Patient" means a patient who is 18 years of age or older admitted to OSH as an Guilty Except for Insanity (GEI) patient pursuant to ORS 161.327 or ORS 161.328, Aid and Assist Patient under ORS 161.365 or ORS 161.371, an Extremely Dangerous Person pursuant to ORS 426.701 or ORS 426.702, an administrative transfer under ORS 179.473, a transfer from Oregon Youth Authority (OYA) or Department of Corrections (DOC) pursuant to ORS 179.173 or as a misdemeanor GEI pursuant to ORS 161.328.

(15) "Gender Identity" means an individual's gender-related identity, which may be different from the identity that is traditionally associated with the individual's sex assigned at birth.

(16) "Good Faith Belief" means an honest or sincere belief in something.

(17) "Harassment" means a patient who is communicating or attempting to communicate with an individual or entity that they are prohibited from contacting by a court order, treatment care plan, or other legal requirement.

(18) "Health Care Representative" means a competent adult appointed by a court to make health care decisions for a patient under ORS Chapter 127.

(19) "Hospital Level of Care (HLOC) Patient" means a patient who is 18 years of age or older and is admitted to one of OSH's licensed hospital units.

(20) "In-Person Visit" means a meeting at the hospital between a patient and an approved visitor who are permitted to see and talk with each other on a scheduled basis for a reasonable period of time.

(21) "Journalist Mail" means any mail sent by a patient to a news media organization such as, but not limited to a newspaper, a magazine and a television station's news department, or sent to a patient from a news media organization.

(22) "Legal Guardian" mean an individual appointed by a court to act as guardian of an adult under ORS Chapter 125.

(23) "Legal Mail" means any mail received from or addressed to an attorney, court, tribal official, governmental official, disability rights organizations or the protection and advocacy system identified in ORS 192.517.

(24) "Limited Access Item" means an item that could pose a safety or security risk in the possession of a patient but is permitted for a set duration of time with the prior authorization of OSH staff and, if applicable, with the direct supervision of OSH staff. A limited access item becomes a prohibited item if the patient possesses or uses the item outside of the scope of the authorization or without OSH staff supervision if required.

(25) "Mail" means any paper documents sent by or received by a patient in a standard sized, legal sized, or special handling envelope with a weight of 16 ounces or less, and thickness of no more than ½ inch. Mail does not include any item other than paper. Legal mail and journalist mail are not subject to the envelope and weight restrictions.

(26) "Metal Detection Screening" means a type of security inspection where an electronic or mechanical device, designed to detect the presence of metal or other substances, is used to scan an individual's body, extra clothing, items in the patient's possession and service animal for the purpose of detecting contraband. Examples include but are not limited to an x-ray machine or wand.

(27) "Minor" means any person less than 18 years of age.

(28) "Oregon State Hospital" or "OSH" or "hospital" means any campus of the Oregon State Hospital system providing inpatient care and/or treatment to individual who are 18 years or older whether the program where the individual is receiving care and/or treatment is licensed at hospital level of care or other licensed level of care..

(29) "OSH Market" means an on-site retail establishment where patients, family members or friends who are visitors as defined in chapter 309 division 106 may purchase unrestricted items or authorized limited access items for the patient.

(30) "OSH Property" means OSH buildings, surrounding grounds, and parking lots. Personally owned vehicles parked on OSH property are not considered part of OSH property.

(31) "OSH Staff" means OSH employees, contractors, interns, and volunteers who have direct or indirect contact with patients.

(32) "Package" means any item sent by or received by a patient that does not meet the definition of mail, journalist mail, or legal mail.

(a) "Authorized Package" means a package received by OSH for the patient where OSH has provided prior authorization under these rules.

(b) "Unauthorized Package" any package that is not an authorized package.

(33) "Pat-down" means a search procedure in which security staff or direct care staff run their hands over a clothed individual's body and inspect their clothing (including but not limited to their pockets, cuffs, socks, and outerwear) for the purpose of detecting contraband. Pat-downs may include searching the patient's extra clothing, items in the patient's possession and service animal.

(34) "Patient" means an individual who is who is 18 years of age or older and receiving care and treatment at OSH, whether the program where the individual is receiving care and treatment is licensed at hospital level of care or other licensed level of care.

(35) "Patient Clothing" means an item worn to cover the patient's body, including but not limited to shoes, head coverings, and outerwear.

(36) "Patient Property Room" means a designated area where patients may store personal property in a designated bin that cannot be stored in their room.

(37) "Personal Bedding" means two pillows, one blanket or comforter, and one sheet set.

(38) "Personal Property" means unrestricted items that belong to the patient that can be kept in the designated storage of the patient's room or patient property room.

(39) "Personal Search" means search procedures where OSH staff physically search an individual's body and clothing for contraband that goes beyond a security screening, which includes a pat-down, skin search or internal search. Personal searches may include searching the person's extra clothing, items in the patient's possession and service animal.

(40) "Physical aggression" means any physical behavior that results in, could result in or threatens physical unwelcome contact or injury, including but not limited to spitting, throwing bodily fluids, throwing objects, posturing, or taking a fighting stance.

(41) "Prohibited Item" means:

(a) Alcohol;

(b) Possession of drugs in the patient's room without authorization by OSH;

(c) Any item that reasonably could be used to escape or leave the hospital without authorization;

(d) Food stored in the patient room or in the patient's storage in the patient property room;

(e) Any item in the possession of a patient who is prohibited from possessing or using that item in their treatment care plan because it is considered detrimental to their treatment;

(f) Excess personal property;

(g) Any limited access item in the possession of a patient that exceeds the scope of the authorization or is not being supervised by OSH staff as required; or

(h) Any item that could pose a safety or security risk for the hospital.

(42) "Reasonable Cause" means an OSH staff member has knowledge or notice of facts or circumstances and the rational inferences drawn therefrom that would lead a reasonable and experienced OSH staff member to come to a conclusion.

(43) "Religious Item" means an item that is associated with the patient's particular system of faith and worship.

(44) "Safety" means protecting the patient and others from potential physical, emotional, or medical harm or preventing the patient from escaping or leaving without authorization, damaging state property, damaging the patient's or another patient's property, or committing or attempting to commit a crime.

(45) "Search" means a close inspection, including physical contact of an individual, any items in the individual's possession, or individual's service animal. Searches may require the removal and separate inspection of shoes, jackets, purses, bags and other accessories.

(46) "Secure Perimeter" means restricted high-security buildings, areas, and quads within the sally port entrances and exits at the state hospital.

(47) "Secure Residential Treatment Facility (SRTF) Patient" means a patients who 18 years of age or older and admitted to one of OSH's licensed secure residential treatment facilities.

(48) "Security Inspection" means a visual inspection or a non-invasive inspection using an electronic or metal device (e.g., metal detection screening or wanding) for the purpose of detecting contraband. A security inspection does not involve physical contact with the subject of the inspection.

(49) "Security Reason" means protecting the patient from serious and immediate harm, protecting others from harm, threats or harassment, and ensuring the safety and security of the hospital.

(50) "Security Risk" means conditions that would pose a risk of harm to the patient, others, or to the hospital.

(51) "Security Staff" means OSH staff assigned to the Security Department at OSH.

(52) "Service Animal" means an animal that is individually trained to do work or perform tasks for the benefit of an individual with a disability, including a physical, sensory, psychiatric, intellectual, or other mental disability. Animals whose sole function is to provide comfort or emotional support do not qualify as service animals under the Americans with Disabilities Act.

(53) "Superintendent" means the executive head of the Oregon State Hospital system or the Superintendent's designee.

(54) "Threat" means a person's expression of an intent to harm, cause alarm to, or intimidate another individual.

(55) "Treatment Care Plan" means an individualized and comprehensive written plan of therapeutic interventions designed, in collaboration between the patient and their treatment team, to facilitate rehabilitation of psychiatric symptoms.

(56) "Unauthorized Currency" means paper money and/or coins in the possession of a patient in any amount or in a location not authorized by OSH.

(57) "Unrestricted Items" means any item that is not contraband and has been authorized by OSH for the patient's use or possession.

(58) "Virtual Visit" means a visit between a patient and an approved visitor using computerized or video monitors, or telephones.

(59) "Visit" or "visitation" means a meeting at the hospital between patient and an approved visitor who are permitted to see and talk with each other on a scheduled basis for a reasonable period of time.

(60) "Visitor" means an individual who is not an OSH staff member or another patient and who OSH has authorized to enter a designated visiting area in the hospital to meet with a patient.

(61) "Wanding" means a type of security inspection where a portable electronic or mechanical device, designed to

detect the presence of metal or other substances, is passed in close proximity of an individual's body or their property for the purpose of detecting contraband.

(62) "Weapon" means any item that can be used or modified to be used to harm the patient or others, including but not limited to guns, knives, improvised pointed or bladed instrument, and pepper spray.

STATUTORY/OTHER AUTHORITY: ORS 179.040, 413.042, ORS 179.360

STATUTES/OTHER IMPLEMENTED: ORS 179.321, 426.385

AMEND: 309-106-0010

REPEAL: Temporary 309-106-0010 from BHS 18-2024

RULE TITLE: Patients' Rights to Visitation and Exceptions

NOTICE FILED DATE: 09/19/2024

RULE SUMMARY: OAR 309-106-0010 amends the processes for a patient to refuse a visitor; to establish a right to in-person visitation with an approved visitor; outlines the process for security staff to form reasonable cause that a visitor should be subject to a search; and what conduct will result in revoking visitation.

RULE TEXT:

(1) The Division recognizes the needs of patients to have access to and maintain contact with family members and the community of which they are a part as well as the needs of family and community members to have access to patients. Except as otherwise provided in this rule, patients have the right to receive visits from any visitor who has submitted a visitor application and been approved for visitation.

(2) OSH shall provide designated places for in-person and virtual visitations to occur in as much comfort and privacy as possible.

(3) OSH may set reasonable limitations on visitation hours and days and type of visitation that includes, but is not limited to:

(a) Requiring supervision during a visit;

(b) Granting exceptions upon visitor or patient requests to change days or hours of visitation; and

(c) Imposing additional reasonable limitations on visitation under the following circumstances:

(A) The Governor has declared a public health emergency as set in ORS 433.441;

(B) The Governor has declared a state of emergency as set in ORS 401.165 that may impact hospital's operations, patients, or OSH staff;

(C) OSH has determined there are safety or security risks that may impact the hospital's operations, patients, or OSH staff.

(4) OSH shall post visitation rules and restrictions on every unit and in the visitation areas.

(5) OSH patients have a right to refuse visitation and may decline to see a visitor or end a visit at any time.

(6) OSH patients have a right to in-person visits for approved visitors except when:

(a) Security staff or direct care staff have reasonable cause to believe that the visitor would pose a safety or security risk, introduce contraband (including prohibited items), or assist in planning or executing a patient's escape or unauthorized leave from OSH;

(b) Security staff or direct care staff have reasonable cause to believe that the visitor would be harmful to the patient's physical or mental health or may pose a safety or security risk;

(c) Security staff or direct care staff observe that the visitor's behavior is disruptive to the patient, others, or OSH, which may include consideration of the visitor's past conduct at OSH;

(d) The visitor refuses to comply with the requirements in this rule or has a history of violating these rules, including but not limited to refusal to submit to security inspection and pat-downs deemed necessary to ensure the safety and security of patients, others, and OSH;

(e) The unit is under current medical restriction because of a communicable disease, or the visitor may have a communicable disease or refuses to comply with required preventative protocols; or

(f) A visitor whose purpose is to solicit the patient to purchase an item the visitor is selling.

(g) The visitor is proselytizing regarding a religion to a patient who does not want that interaction;

(h) The circumstances in section 3 above exist.

STATUTORY/OTHER AUTHORITY: ORS 179.040, 413.042, ORS 179.360

STATUTES/OTHER IMPLEMENTED: ORS 179.321, 426.385

AMEND: 309-106-0015

REPEAL: Temporary 309-106-0015 from BHS 18-2024

RULE TITLE: OSH Review of Visitor Applications

NOTICE FILED DATE: 09/19/2024

RULE SUMMARY: ORS 309-106-0015 provides categories of visitors who are pre-approved for visitation; provides discretion for the Superintendent to place limitations on pre-approved visitors based on the visitor's violation of OSH rules or other disruptive conduct during visitation; amends processes for a visitor to apply for visitation; details the process for a visitor to inform OSH of medical devices and the search procedure for medical devices of a visitor; amends the process for a minor child accompanying a visitor to OSH; more clearly defines conduct that results in a mandatory denial of visitation; provides conduct that may result in termination or denial of visitation a application; amends the rules for when a visitation application must be denied and when an application may be denied on review.

RULE TEXT:

(1) Except for provided in section (2) of this rule, the following individuals are automatically approved for visitation:

(a) A patient's attorney recognized by the court as representing the patient, or an agent of the attorney, such as an investigator or paralegal, provided each person provides evidence of their representation of the patient, including but not limited to state bar membership or a letter of representation from the law firm or engagement letter from the investigation firm.

(b) A court-appointed, attorney-appointed or otherwise contracted licensed psychologist or psychiatrist whose purpose of conducting an independent evaluation of the patient and where legal authority to conduct the evaluation has been provided to OSH, such as but not limited to a court order or letter of engagement signed by the patient, guardian, judge or patient's attorney; or

(c) The patient's legal guardian who has provided proof of current guardianship.

(2) For those visitors automatically approved under section (1) of this rule, the Superintendent may place limitations on visitation by notifying the visitor and patient in writing based on a significant safety issue, security risk, or disruption to hospital operations. These circumstances may include but are not limited to:

(a) The visitor commits or attempts to commit a crime upon OSH premises or against the patient;

(b) The visitor repeatedly violates or attempts to violate visitation rules; and

(c) The visitor has been identified as an accused person in an abuse investigation being conducted under OAR Chapter 419, division 120.

(3) All other individuals, who want to visit a patient at OSH, are required to apply for and be approved for visitation by OSH prior to visiting a patient.

(4) As part of the visitor application, all visitors must do the following:

(a) Complete the online visitor application, available on OSH's website;

(b) Submit to an annual background check;

(c) Disclose any medical device or equipment (e.g., pacemaker, inhaler, wheelchair, or walker) or necessary prescription medication that the visitor is bringing into the secure perimeter of the hospital and provide a description of such equipment or medication.

(A) Visitors with proper documentation from a physician, nurse practitioner, or medical clinic regarding a medical condition or disability requiring a medical device or equipment, shall present this information to OSH staff to help inform staff of the visitor's circumstances. This documentation will not exempt the visitor from the security screening process.

(B) Any prescription medication must be in its original container with the original label that contains the visitor's name, name of medication, prescriber, and prescription number.

(C) If a visitor is prescribed medication or must rely on a new medical device or equipment after their application has been approved, the visitor must contact the OSH Reception Center at least 48-hours prior to their next visitation to provide satisfactory documentation of the new medication or medical device that they plan to bring with them to

visitation.

(D) If the new prescribed medication or medical device or equipment was prescribed in fewer than 48-hours prior to the visitation, the visitor must contact the OSH Reception Center as soon as practicable prior to the visit and provide satisfactory documentation of the new medication or medical device or equipment that they plan to bring with them to visitation.

(E) Disclose whether the visitor is bringing a service animal to the visit and complete any OSH-required pre-approval paperwork for the animal.

(d) Disclose if they are accompanying a minor child to the visitation, and provide documentation confirming that each child visiting a patient is the visitor or patient's child or is in the visitor's legal custody or court-ordered physical custody at the time of the application.

(5) OSH must deny an application for all types of visitation, in-person and virtual, for the following reasons:

(a) The patient or visitor is prohibited by a court order from contacting one another or being in the same geographic area.

(b) The visitor is a minor and the patient has a pending criminal charge or a conviction of a sex offense against a minor, unless the minor is the patient's biological or adopted child or grandchild who is not the victim of the pending criminal charge or a conviction of a sex offense against a minor.

(c) The visitor is accompanying a minor, and the visitor has a pending or prior conviction of a sex offense involving a minor.

(d) The visitor is a former staff member and there are allegations or findings of abuse or neglect related to a patient.

(6) OSH must deny an application for in-person visitation for the following reasons but may approve an application for virtual visitation:

(a) The visitor has active warrants;

(b) The visitor was convicted of possession, control, or delivery of an explosive device;

(c) The visitor has a pending criminal charge or a conviction in the preceding 10 years of a violent felony as that term is defined in ORS 147.500; and

(d) The visitor has a pending criminal charge or a conviction for a drug-related crime in the preceding 5 years, except where the visitor confirms that they are the patient's 12-step program sponsor (e.g. Alcoholics Anonymous, Narcotics Anonymous, Cocaine Anonymous, Al-Anon, etc.) or peer recovery specialist, they have no pending drug-related charge, and the only drug-related conviction is in the preceding 3 years, they may have in-person visitation with the patient.

(7) OSH may deny an application for visitation if the security staff or direct care staff believe that the visitor could pose a clinical, safety or security risk to the patient, others or the hospital. Specific reasons for the restriction must be documented.

(8) The review process of OAR 308-106-0015(6) and (7) notwithstanding, all visitation applications from current or former OSH staff must be reviewed by the Superintendent or designee for approval, denial, or approval with restrictions.

(9) OSH shall notify the patient in writing of a limitation on a visit or denial of a visitor application under these rules, unless notification would be detrimental to the patient's mental or physical health, which must be documented. The notification must state the reasons, duration and review process.

(10) OSH may set place limitations on a visitor as provided in OAR chapter 943, division 12.

(11) A patient or their representative may request review of OSH's decision to deny a visitor's application by following the grievance procedures set out in OAR chapter 309, division 118.

STATUTORY/OTHER AUTHORITY: ORS 179.040, 413.042, ORS 179.360

STATUTES/OTHER IMPLEMENTED: ORS 179.321, 426.385

ADOPT: 309-106-0025

REPEAL: Temporary 309-106-0025 from BHS 18-2024

RULE TITLE: Visitation Requirements

NOTICE FILED DATE: 09/19/2024

RULE SUMMARY: OAR 309-106-0025 amends the requirements and rules for visitation including: rules for approperiate clothing for visitors; prohibited clothing items within the security perimeter; prohibits words or logos on clothing that cannot be worn at OSH in the presence of patients; prohibits clothing that could be used as a weapon or to conceal contraband; indicates items that are prohibited from being allowed into visitation spaces; exempts certain classifications of visitors from prohibited property rules based on the nature of the visit; provides guidance to security staff to observe and identify prohibited conduct or property; prohibits certain conduct during visitations that may facilitate the dissemination of contraband.

RULE TEXT:

(1) Visitors must abide by all requirements set out in these rules. Failure to do so may result in the termination of the visit and limitations on future visits.

(2) Visitors must abide by the following requirements for the safety and security of the patients, staff, visitors, and hospital:

(a) Visitors must wear a base layer of clothing only, which may include a dress, skirt, shirt, pants, or shorts.

(b) Visitors must also wear appropriate footwear such as shoes or sandals.

(c) Visitors are prohibited from wearing into the secure perimeter:

(A) Camouflage or military-type clothing unless it has been approved in advance by the Security Director or designee;

(B) Clothing with words or logos related to alcohol, tobacco, products, drugs, vulgarity, violence, bigotry, sexual connotations, or those containing allusions to any of these items;

(C) Clothing that may be considered provocative, including, but not limited to, transparent, skin-tight, low-cut clothing, or clothing that exposes undergarments, bare back, buttocks, or midriff at any time (e.g., while sitting, standing, or bending over);

(D) Neckties, scarves, necklaces, or any other item that encircles the neck;

(E) Outerwear (e.g., jackets, gloves, hats). When wearing hats or other head coverings that obstruct the facial features unless it is a religious garment that has been disclosed to OSH in advance;

(F) Multiple layers of clothing;

(G) Shoes or accessories that might be a safety hazard, including any item that may be used as a weapon or ligature device; and

(d) Visitors must not bring into the secure perimeter computers, tablets, cellular phones, watches or any other electronic or battery-powered device.

(3) Visitors may only bring these items into the secure perimeter:

(a) Their locker keys;

(b) Their badge;

(c) Pre-disclosed prescription medication;

(d) Pre-disclosed medical device or equipment;

(e) Service animal; and

(f) When there is a minor visitor under the age of two, the following items are allowed into the secure perimeter:

(A) A clear baby bottle with fluids inside;

(B) A single baby blanket;

(C) Two diapers and diaper wipes;

(D) One undamaged plastic toy; and

(E) Any additional items must be approved on a case-by-case basis by the Security Shift Supervisor. However, strollers, baby carriers, car seats, and stuffed animals are not allowed in the secure perimeter.

(4) Notwithstanding section (3) of this rule, additional items (e.g., computers, papers, pens, books and phones) subject to the approval of security staff may be brought into the secure perimeter:

(a) By the following individuals:

(A) A patient's attorney recognized by the court as representing the patient, or an agent of the attorney, such as an investigator or paralegal, provided each person provides evidence of their representation of the patient, including but not limited to state bar membership or a letter of representation from the law firm or engagement letter from the investigation firm.

(B) A court-appointed, attorney-appointed or otherwise contracted licensed psychologist or psychiatrist whose purpose of conducting an independent evaluation of the patient and where legal authority to conduct the evaluation has been provided to OSH, such as but not limited to a court order or letter of engagement signed by the patient, guardian, judge or patient's attorney; and

(C) Clergy.

(b) Under no circumstances may any of the individuals described in this section bring in weapons, prescription medications not in its original packaging and prescribed for the visitor, non-prescription medications, controlled substances, alcohol, food and beverages.

(5) Security staff or direct care staff may continuously observe visitors and patients to identify any unusual behavior or security concerns. Suspicious activity includes, but it not limited to:

(a) Passing contraband or engaging in conduct that appears to be passing contraband;

(b) Engaging in conflict with patients, other visitors, or staff;

(c) Inappropriate touching or lewd behavior; or

(d) Appear to be under the influence of intoxicants.

(6) For in-person contact visits, a brief hug at the beginning and at the conclusion of a visit is allowed. No further physical contact between a patient and a visitor is allowed. Security staff or direct care staff may interrupt any attempt to prolong the brief embrace. If the patient or visitor persists in engaging in physical contact during visitation, security staff or direct care staff may end the visit.

(7) Patients and visitors are not permitted to move about the visiting area or any other room outside of the visiting area including in the gardens.

(8) To limit the opportunity to pass contraband to patients, patients and visitors are not permitted to purchase or eat food during the visit, or to play games together.

(9) Patients are not permitted to approach or follow visitors outside of the designated visiting area.

(10) All minors must be accompanied by a pre-approved adult visitor who is a parent, legal guardian, or court-ordered escort to enter a visitation area. Visitors must provide documentation confirming that each child visiting is their child, in their legal custody or court-ordered physical custody at the time of the application.

(11) Visitors may be required to wear personal protective equipment, including a mask, and adhere to other preventative protocols while a medical restriction is in effect.

(12) Video visitation is available to all patients and their approved visitors.

STATUTORY/OTHER AUTHORITY: ORS 179.040, 413.042, 179.360

STATUTES/OTHER IMPLEMENTED: ORS 179.321, 426.385

ADOPT: 309-106-0030

REPEAL: Temporary 309-106-0030 from BHS 18-2024

RULE TITLE: Visitor Security Inspection and Screening

NOTICE FILED DATE: 09/19/2024

RULE SUMMARY: OAR 309-106-0030 addresses visitor security inspections and provides for: when and where visitors will be subject to security and property screening; for storing visitor property during visitation; the process for searching a visitor's person; when search devices may be used on visitors; prohibits certain body piercings or jewelry; provides for the searching of medical devices; provides for the exemption from metal detector screenings; provides for the search process for pat downs; provides guidelines for service animals accompanying a visitor; provides procedures for confiscating contraband.

RULE TEXT:

(1) Visitors must be processed through a security checkpoint to access the visitation area in the secure perimeter to protect the safety and security of the hospital. Security staff or direct care staff must screen all visitors, including visual inspection, metal detection screening, and pat-downs.

(2) Lockers may be provided for visitors' use to store purses, carrying cases, or other personal items until the visit is over.

(3) A visitor may be asked to submit to a security inspection or pat-down but may deny consent for the search. If the visitor denies or withdraws consent for the search at any time, visitation will be denied and any search must be immediately discontinued. .

(4) Prior to entering the secure perimeter and prior to visitation, all visitors, including attorneys, investigators, and psychologists or other professionals hired by the patient or attorney, must undergo security screening, including minors and service animals. For most visitors, successfully completing security screening and the related inspection of clothing and authorized items will alleviate the need for a pat-down.

(5) Visitors are subject to a security inspection (visual inspection, metal detection screening, and wanding) prior to entering the secure perimeter of the hospital. Security inspections are conducted as follows:

(a) Visitors must be in a single or base level of clothing. All additional items such as hats, gloves, coats, multiple layers of shirts, extra socks and shoes must be removed. Visitors must turn out their pockets, and their sleeves and cuffs must be unrolled.

(b) Visitors may be asked to remove body piercings or excessive jewelry to expedite the screening process. Excessive jewelry, areas of the body that have body piercings or undergarments with metal clasps or adjusters often alarm metal detectors and may delay or even prevent visiting.

(c) For wanding, visitors must stand with legs approximately shoulder-width apart and their arms outstretched.

(d) Visitors are required to cooperate with the instructions of security staff or direct care staff in order to facilitate the security inspection process, such as requests to turn out pockets, unroll cuffs, or turn around. If visitors do not cooperate, the visit must end.

(6) Visitors with a medical device such as a pacemaker, defibrillator, device that operates under magnetic calibration, metal implants, wheelchair, bone growth stimulator, or other internal or external medical device) should check with their doctor prior to arriving at OSH to determine if it is safe to go through the metal detection screening. Depending on their doctor's recommendations, the visitor must include that information in their visitor application or provide an update to OSH if discovered after the application is submitted.

(7) Visitors who are exempt from metal detection screening include those persons who have provided OSH in their visitor application approved documentation of a metal condition or medical device or equipment in or upon their person. If a person is exempt from metal detection screening, a pat-down must be conducted prior to entry into the secure perimeter for visitation.

(a) All pre-disclosed and approved medication, medical devices and equipment, and service animals must be searched prior to visitation.

(b) A modified search will be used for visitors requiring wheelchairs or electric scooters as the reliability of hand-held metal detectors is limited by the structure of the chair or scooter. Visitors in wheelchairs or electric scooters must limit their accessories and personal possessions to only those items medically necessary and allowed within these rules during visitation.

(8) If metal detection screening alerts to the presence of metal, or security staff or direct care staff suspect the presence of contraband, security staff or direct care staff must investigate with a pat-down.

(9) Pat-downs must be conducted as follows:

(a) A minimum of two OSH staff members, comprised of either security staff or direct care staff, must conduct pat-downs.

(b) The security staff or direct care staff member making physical contact with the visitor to conduct the pat-down must be the same sex as the visitor. If visitor expresses a preference for a staff member of their same gender identity to conduct the pat-down:

(A) A security staff or direct care staff member of that gender identity must conduct the pat-down.

(B) If a security staff or direct care staff member of the visitor's preferred sex or gender identity is not immediately available to conduct the pat-down, then a security staff or direct care staff member, who is not the visitor's preferred sex or gender identity, may conduct the pat-down with the visitor's consent.

(C) If the visitor does not consent, the visit must end.

(D) Other security staff or direct care staff, who are involved in the pat-down but who are not making physical contact with the visitor, do not need to be the visitor's preferred sex or gender identity.

(c) Visitors must be wearing a single or base level of clothing. All additional items such as hats, gloves, coats, multiple layers of shirts, extra socks and shoes must be removed. Visitors must turn out their pockets, and sleeves and cuffs must be unrolled.

(d) Visitors must stand with legs approximately shoulder-width apart and their arms outstretched.

(e) Pat-downs must be conducted within view of the camera surveillance system.

(f) Visitors are required to cooperate with the instructions of security staff or direct care staff to facilitate the pat-down process, such as requests to turn out pockets, unroll cuffs, shake out their clothing, or turn around. If the visitors do not want to cooperate, then the visit must end.

(10) Visitors who bring in service animals will be subject to the following requirements:

(a) Visitors must be responsible to ensure that the service animal is properly controlled and behaved at all times.

(b) Visitors may be asked the following in relation to the service animal:

(A) If the animal is required because of a disability; and

(B) What work or task the animal has been trained to perform.

(c) Visitors are required to remove any apparel or other item the service animal is wearing so that security staff or direct care staff may search the item prior to entry into the secure perimeter of the hospital;

(d) Patients are not allowed to touch service animals.

(e) A visitor will not be asked to remove the service animal from the premises unless:

(A) The animal is out of control and the visitor does not take effective action to control it; or

(B) The animal is not housebroken.

(f) Where there is a legitimate reason to ask that the service animal to be removed, staff shall offer the visitor the opportunity to visit without the animal's presence, if the visitor can arrange to have the animal removed and cared for and controlled outside of the secure perimeter. Under no circumstances may a staff person remove or care for the animal.

(11) If illicit contraband is found on a visitor or in their property at any time, including hidden in their prescription medication, or medical devices or equipment, security staff or direct care staff must confiscate the item and contact law enforcement. OSH must also:

(a) Create a chain of custody and hold the illicit contraband in a secure area; and

(b) Contact law enforcement and turn over the illicit contraband if law enforcement is willing to accept the item(s), and

document the action taken. If law enforcement declines to investigate further or accept the illicit contraband, then dispose of the illicit contraband in the presence of at least two OSH staff and document the action taken.

(12) Any approved item entering visitation with a child or other visitor will be searched during the screening process by security staff. Security staff shall search the additional items approved for minor visits or other visitors who had been pre-approved to bring medications, medical devices or equipment into the secure perimeter upon exit to ensure they are exiting with the visitor.

STATUTORY/OTHER AUTHORITY: ORS 179.040, 413.042, 179.360

STATUTES/OTHER IMPLEMENTED: ORS 179.321, 426.385

ADOPT: 309-106-0035

REPEAL: Temporary 309-106-0035 from BHS 18-2024

RULE TITLE: Administrative Review

NOTICE FILED DATE: 09/19/2024

RULE SUMMARY: OAR 309-106-0035 provides the process for administrative review of the denial of visitation applications.

RULE TEXT:

(1) Within 60 days of a decision denying an application for visitation, a prospective visitor may challenge the decision by submitting a completed written request for Administrative Review to OSH Ombuds Office. The denial will be reviewed as follows:

(a) The administrative review request must include information supporting reversal or modification of the decision and copies of any supporting documents or official records.

(b) Apon timely receipt of a completed Administrative Review Request and copies of any supporting documents or updated official records, the OSH Ombuds Office will review the decision and either affirm, reverse or modify the decision.

(c) The OSH Ombuds Office may request additional information from the prospective visitor, law enforcement agency, or other reliable resource to complete the review.

(d) Reversal or Modification of a Decision Denying an Application for Visitation or Limitation on Visitation: A decision denying an application may be reversed or modified by the OSH Ombuds Office on in the following circumstances:

(A) The initial decision is determined by the OSH Ombuds Office to have been made in error based on incorrect information, or an incorrect application of these rules; or

(B) Circumstances impacting eligibility for visitation changed since the date of the decision denying the application for visitation or decision to limit visitation under review.

(e) The OSH Ombuds Office's decision shall be final and not subject to further review, except for the Superintendent's review for Extraordinary Circumstances.

(2) Administrative Review by Superintendent for Extraordinary Circumstances:

(a) Notwithstanding any other provision of these rules, the Superintendent or their designee may, in their sole discretion, reverse or modify a decision denying an application for visitation between a patient and an immediate family member of the patient for extraordinary circumstances.

(b) The Superintendent or designee's decision will be final and subject to review only as provided for in ORS 183.484.

STATUTORY/OTHER AUTHORITY: ORS 179.040, 413.042, 179.360

STATUTES/OTHER IMPLEMENTED: ORS 179.321, 426.385

Preston Berman
2600 center st NE
Salem, OR 97301

# E

U.S. POSTAGE PAID
QUADIENT INC.
ePostage

## PRIORITY MAIL EXPRESS®

PRESTON BERMAN
OREGON HEALTH AUTHORITY
# 4
2600 CENTER ST NE # DOCK
SALEM OR 97301-2669

Ship Date: 11/27/24
Weight: 0 lb 6 oz
503945295
**0007**

SIGNATURE REQUIRED
SCHEDULED DELIVERY 6 PM

C002



CLARK, US COURTHOUSE
STE 201
1000 SW 3RD AVE
PORTLAND OR 97204-2932

### USPS SIGNATURE TRACKING # EP



9281 7902 2008 6364 4040 89

