FILED 30 JAN '25 10:08USDC-ORP

PRESTON BERMAN
2600 Center St. NE
Salem, OR 97301-2669
Telephone: 503.947.2704

Plaintiff, appearing Pro Se

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| **PRESTON BERMAN** | Case No: 6:24-cv-01968-MTK |
| Plaintiff, | |
| v. | MOTION FOR LEAVE TO FILE REPLY TO DEFENDANTS' AFFIRMATIVE DEFENSES |
| **OREGON; OREGON STATE HOSPITAL; SARA WALKER,** in her official capacity as interim superintendent of the Oregon State Hospital; **SEJAL HATHI,** in her official capacity as Director of the Oregon Health Authority, | |
| Defendants. | |

Plaintiff Preston Berman respectfully requests leave to file a reply to Defendants' affirmative defenses. Plaintiff seeks to address specific legal and factual issues raised in Defendants' Answer that require clarification, including:

1. The applicability of sovereign immunity under Title II of the ADA.
2. Whether exhaustion of administrative remedies was required or would have been futile.

PAGE 1 -
MOTION FOR LEAVE TO FILE REPLY TO DEFENDANTS' AFFIRMATIVE DEFENSES

3. Whether the requested relief constitutes a fundamental alteration or undue burden.

A proposed reply is attached as Exhibit A for the Court's review.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant this Motion for Leave to File a Reply to Defendants' Affirmative Defenses. The additional explanation and rebuttal of Defendants' defenses—particularly regarding the applicability of the PLRA, the scope of ADA mandates, and the ongoing nature of the alleged violations—will aid in clarifying the issues and promoting a fair resolution of this matter.

DATED: January 24, 2025.

Respectfully submitted,

s/ *Preston Berman*
PRESTON BERMAN
2600 Center St. NE
Salem, OR 97301-2669
Telephone: (503) 947-2704

Plaintiff, appearing Pro Se

## CERTIFICATE OF SERVICE

I certify that on January 24, 2025, I served the foregoing MOTION FOR LEAVE TO FILE REPLY TO DEFENDANTS' AFFIRMATIVE DEFENSES upon the parties hereto by the method indicated below, and addressed to the following:

| | |
|---|---|
| DAN RAYFIELD<br>Attorney General<br>THOMAS H. CASTELLI #226448<br>Senior Assistant Attorney General<br>JILL CONBERE #193430<br>Assistant Attorney General<br>Department of Justice<br>100 SW Market Street<br>Portland, OR 97201<br>Telephone: (971) 673-1880<br>Fax: (971) 673-5000<br>Email: thomas.castelli@doj.oregon.gov<br>Email: jill.conbere@doj.oregon.gov<br><br>Attorneys for Defendants | ___ HAND DELIVERY<br>___ MAIL DELIVERY<br>___ OVERNIGHT MAIL<br>___ TELECOPY (FAX)<br>_X_ E-MAIL<br>___ E-SERVE |

DATED: January 24, 2025.   Respectfully submitted,

s/ *Preston Berman*
PRESTON BERMAN
2600 Center St. NE
Salem, OR 97301-2669
Telephone: (503) 947-2704

Plaintiff, appearing Pro Se

PAGE 1 - CERTIFICATE OF SERVICE

# EXHIBIT A

PRESTON BERMAN
2600 Center St. NE
Salem, OR 97301-2669
Telephone: 503.947.2704

Plaintiff, appearing Pro Se

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| **PRESTON BERMAN**<br><br>Plaintiff,<br><br>v.<br><br>**OREGON; OREGON STATE HOSPITAL;**<br>**SARA WALKER**, in her official capacity as interim superintendent of the Oregon State Hospital;<br>**SEJAL HATHI**, in her official capacity as Director of the Oregon Health Authority,<br><br>Defendants. | Case No: 6:24-cv-01968-MTK<br><br>REPLY TO DEFENDANTS' AFFIRMATIVE DEFENSES |

Plaintiff Preston Berman responds to Defendants' Affirmative Defenses as follows:

1. **First Affirmative Defense – Objective Basis for Decisions**

    a. Defendants assert that all actions and policies at Oregon State Hospital (OSH) have a "valid, legitimate, objectively reasonable, and non-discriminatory" basis. In truth, the challenged restrictions are overbroad, lack individualized assessments, and fail to consider less-restrictive alternatives:

PAGE 1 - REPLY TO DEFENDANTS' AFFIRMATIVE DEFENSES

i. **Overbreadth and Failure to Tailor**: By categorizing basic items such as paintbrushes and pens as "sharps," and imposing blanket prohibitions on all residents, Defendants neglect individualized risk assessment. These sweeping constraints go far beyond addressing legitimate safety issues, instead depriving patients of everyday autonomy without evidence that they pose an actual threat.

ii. **Lack of Less-Restrictive Measures**: Defendants' affirmative defense fails to show they ever explored more narrowly targeted options—like increased staffing, selective monitoring, or enhanced training—before imposing facility-wide bans on technology, community access, or property. This shortfall runs counter to the ADA and *Olmstead*, which mandate thoughtful exploration of reasonable, less-restrictive measures to promote community integration and independence.

iii. **Discriminatory Effect**: Far from being "non-discriminatory," these rules impose heightened isolation and institutional dependence on patients with mental health disabilities. Under ADA Title II and *Olmstead*, Defendants must affirmatively avoid segregation where possible. Their restrictive protocols, applied uniformly rather than grounded in individualized needs, end up segregating patients unnecessarily.

iv. **Evidence of Pretext or Inconsistency**: Discovery will reveal whether these policies are, in fact, consistently enforced or if they

reflect arbitrary enforcement patterns. To the extent Defendants' rules have proven sporadic or contradictory, that inconsistency undermines their claim of an "objectively reasonable" approach. If, for instance, select items are routinely permitted in some units but banned in others under the guise of "safety," it suggests a lack of any coherent basis.

b. Because Defendants rely on a broad justification divorced from individualized risk or patient progress, their claim of an "objective basis" fails. It is neither proportionate to actual safety concerns nor consistent with the integration principles of the ADA and Due Process.

2. **Second Affirmative Defense – Failure to Exhaust Administrative Remedies**

a. Defendants allege that Plaintiff is barred from bringing this action due to a failure to exhaust administrative remedies, presumably under the Prison Litigation Reform Act (PLRA). That assertion is inapplicable. Because Plaintiff is civilly committed rather than incarcerated pursuant to criminal charges or convictions, the PLRA's exhaustion requirement does not govern this case:

i. **PLRA's Definition of "Prisoner" Excludes Civilly Committed Individuals**: By its terms, the PLRA defines a "prisoner" as a person detained or incarcerated "for...violations of criminal law." Individuals confined via civil processes—such as those hospitalized under Oregon's mental health statutes—fall outside that definition. They are not imprisoned for any criminal conviction or charge.

    ii. **Ninth Circuit Precedent**: The Ninth Circuit in *Page v. Torrey*, 201 F.3d 1136 (9th Cir. 2000), held that a person civilly committed under California's Sexually Violent Predator Act was not a "prisoner" subject to the PLRA's provisions, emphasizing that civil detention arises from non-criminal commitments rather than penal sanctions. Plaintiff here is likewise committed through civil procedures—not through the ordinary criminal-justice system—thus placing him outside the PLRA's scope.

    iii. **Consistent Authority in Other Circuits**: Other appellate courts concur:

        1. Eleventh Circuit: In *Troville v. Venz*, 303 F.3d 1256 (11th Cir. 2002), the court concluded that civilly committed individuals are not governed by the PLRA.

        2. Eighth Circuit: In *Kolocotronis v. Morgan*, 247 F.3d 726 (8th Cir. 2001), the court similarly found that a patient civilly committed after a not-guilty-by-reason-of-insanity verdict did not qualify as a "prisoner."

    iv. **Oregon Law Confirms Civil Commitment Status**: Under Oregon law, those committed via ORS Chapter 426 are receiving non-punitive inpatient mental health treatment rather than criminal incarceration. Plaintiff's confinement thus arises solely from mental health and public-safety considerations, not from a criminal sentence or an adjudication of guilt.

  b. Consequently, the PLRA's exhaustion mandates—upon which Defendants appear to rely—do not apply. Because Plaintiff is not a "prisoner" within the meaning of 42 U.S.C. § 1997e(h), the lack of PLRA-based exhaustion cannot bar this action.

  c. Even if Defendants contend that some administrative remedy should be exhausted, there is no requirement under the Americans with Disabilities Act (ADA) that plaintiffs pursue or exhaust any specialized grievance procedure before bringing suit. Courts consistently confirm that the ADA does not impose a mandatory exhaustion prerequisite, distinguishing it from other statutory regimes like the PLRA. The Ninth Circuit has held that "[t]here is no exhaustion requirement for claims brought under Title II of the ADA." *Bogovich v. Sandoval*, 189 F.3d 999, 1002 (9th Cir. 1999) (citation omitted). While other statutes can impose exhaustion requirements under certain circumstances, *see* e.g. 42 U.S.C. § 1997e ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are

  d. exhausted), Defendants have cited no such statute or authority here.

3. **Third Affirmative Defense – Unclean Hands**

  a. Defendants assert that Plaintiff's own conduct—such as refusing placement or neglecting opportunities—caused the harm at issue. This allegation is misplaced. Plaintiff's claims center on facility-wide rules and procedures

that unfairly restrict personal property, technology use, and community integration for all PSRB residents:

    i. **No Justification for Blaming Plaintiff's Conduct**: To the extent Defendants claim Plaintiff refused alternative placements or programs, they must produce documentation evidencing these so-called "options." Merely speculating that Plaintiff failed to cooperate does not show that the offered placements satisfied Olmstead or ADA standards for less-restrictive environments.

    ii. **Evidence of Participation**: Contrary to any suggestion of Plaintiff's noncompliance, Plaintiff has consistently attempted to follow institutional rules and engage in available programs. Discovery will reveal whether Defendants, in fact, provided any individualized rehabilitation plan or if blanket restrictions precluded meaningful participation.

    iii. **Systemic Nature of the Policies**: Plaintiff's suit addresses sweeping restrictions that affect every PSRB resident, not only Plaintiff. A single resident's alleged inactions do not justify facility-wide limits on property or step-down opportunities. Even if there were isolated behavior issues, that does not excuse imposing the same stringent measures on all patients, contrary to person-centered standards of care.

     **b.** Because the challenged policies remain systemically overbroad—regardless of Plaintiff's individual actions—the defense of "unclean hands" is inapplicable here.

4. **Fourth Affirmative Defense – Fundamental Alteration/Undue Burden**

     **a.** Defendants assert that granting relief—such as restoring step-down programs, permitting community outings, or easing blanket restrictions—would fundamentally alter their program or impose undue burdens. This defense lacks merit:

          i. **Proportionality and Reasonableness**: The modifications Plaintiff seeks are neither radical nor costly; they include less-restrictive programs, reduced prohibitions, and person-centered assessments. These requests align with the Americans with Disabilities Act (ADA), which mandates integrating individuals with disabilities into the "most integrated setting appropriate" without insisting on major program overhauls or safety compromises.

          ii. **History of Less-Restrictive Practices**: Oregon State Hospital has successfully operated less-restrictive measures in the past. For example, the former Salem Cottage program and more liberal community-outing policies functioned without fundamentally altering OSH's mission or structure. Defendants' decision to dismantle or prohibit those programs undermines their claim that continuation or reinstatement of them would be unduly burdensome.

   iii. **Unsupported Burden:** To the extent Defendants claim cost or resource strain, they must supply concrete evidence—such as a detailed financial or operational assessment—to prove that the requested changes truly impose an excessive hardship. If discovery shows no such analysis exists, the defense rests on mere speculation.

   iv. **Federal Law's Priority Over Administrative Inconvenience:** Under Title II of the ADA, a state's general pleas of cost or convenience do not override its obligation to offer reasonable accommodations, unless it definitively meets the high evidentiary burden of proving that any proposed modifications are truly "undue." Vague references to safety or financial challenges cannot displace federal mandates for meaningful integration and less restrictive treatment.

 b. Because Plaintiff's requested modifications are demonstrably feasible and consistent with federal requirements, the "fundamental alteration" or "undue burden" defense is unavailing.

5. **Fifth Affirmative Defense – Statute of Limitations/Laches**

 a. Defendants contend that Plaintiff's claims are time-barred or subject to laches. This defense fails for several reasons:

   i. **Ongoing Violations:** The restrictions at Oregon State Hospital (OSH)—including denial of less-restrictive settings and overly broad contraband rules—are continuously enforced. Because each day the hospital maintains these unlawful policies constitutes a fresh

violation, the clock for any statute of limitations resets on an ongoing basis.

   ii. **Timely Filing**: Even if there is a specific limitations period, Plaintiff's complaint was filed within that period, measured from the most recent instance of the harm. The relevant date is not the initial imposition of these restrictions, but rather their continued application, which directly affects Plaintiff's ability to secure appropriate treatment and community access.

   iii. **Tolling Doctrines**: Where institutional confinement impedes access to legal resources or delays the discovery of key facts, courts often apply equitable tolling. Here, Plaintiff has limited means to pursue a lawsuit from within a secure mental health environment, justifying an extended timeframe to prepare and file the claims.

   iv. **Equitable Considerations**: Defendants' laches argument—asserting "unreasonable delay"—ignores that systemic reforms for disabled individuals should not be barred merely due to passage of time. When fundamental rights and ongoing harm to a vulnerable population are at stake, equity favors hearing the merits rather than dismissing on laches grounds.

b. Consequently, Plaintiff's claims remain timely under both statutory and equitable principles, and the ongoing nature of these alleged violations prevents Defendants from prevailing on a statute-of-limitations or laches defense.

PAGE 9 - REPLY TO DEFENDANTS' AFFIRMATIVE DEFENSES

6. **Sixth Affirmative Defense – Sovereign Immunity**

    a. Defendants assert that sovereign immunity bars some or all of Plaintiff's claims. This argument fails for multiple reasons:

        i. **ADA's Abrogation of Sovereign Immunity:** Title II of the Americans with Disabilities Act explicitly abrogates state sovereign immunity for claims involving disability discrimination. In *United States v. Georgia*, 546 U.S. 151 (2006), the Supreme Court held that Title II validly abrogates immunity when a plaintiff alleges constitutional violations along with ADA claims. Because Plaintiff alleges that Defendants' policies amount to discrimination under the ADA, sovereign immunity does not apply.

        ii. **Fourteenth Amendment and Unconstitutional Conditions:** Plaintiff's claims of unconstitutional conditions implicate the Due Process Clause of the Fourteenth Amendment. Federal courts consistently recognize that states may be sued under 42 U.S.C. § 1983 to remedy ongoing violations of federal constitutional rights, notwithstanding broad assertions of immunity.

        iii. **Prospective Injunctive Relief**: Even aside from statutory abrogation, sovereign immunity does not shield state officials from claims seeking prospective injunctive relief. Under *Ex parte Young* and related doctrine, Plaintiff is entitled to request the termination or modification of OSH policies that violate federal law without running afoul of the Eleventh Amendment.

    **b.** Because the ADA and federal constitutional principles together overcome any claimed sovereign immunity, Defendants cannot avoid liability on this ground.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully submits that each of Defendants' affirmative defenses is without merit. The Defendants' policies and practices fail to reflect individualized risk assessments, operate in direct conflict with the Americans with Disabilities Act (ADA) and fundamental *Olmstead* principles, and continue to infringe upon the constitutional and statutory rights of civilly committed individuals. Accordingly, Plaintiff asks that the Court reject Defendants' defenses and allow these claims to proceed on the merits, thereby ensuring meaningful scrutiny of OSH's restrictive policies and practices.

DATED: January 24, 2025.

                                            Respectfully submitted,

                                            *s/ Preston Berman*
                                            PRESTON BERMAN
                                            2600 Center St. NE
                                            Salem, OR 97301-2669
                                            Telephone: (503) 947-2704

                                            Plaintiff, appearing Pro Se

# CERTIFICATE OF SERVICE

I certify that on January 24, 2025, I served the foregoing REPLY TO DEFENDANTS' AFFIRMATIVE DEFENSES upon the parties hereto by the method indicated below, and addressed to the following:

DAN RAYFIELD  
Attorney General  
THOMAS H. CASTELLI #226448  
Senior Assistant Attorney General  
JILL CONBERE #193430  
Assistant Attorney General  
Department of Justice  
100 SW Market Street  
Portland, OR 97201  
Telephone: (971) 673-1880  
Fax: (971) 673-5000  
Email: thomas.castelli@doj.oregon.gov  
Email: jill.conbere@doj.oregon.gov  

Attorneys for Defendants

\_\_\_ HAND DELIVERY  
\_\_\_ MAIL DELIVERY  
\_\_\_ OVERNIGHT MAIL  
\_\_\_ TELECOPY (FAX)  
_X_ E-MAIL  
\_\_\_ E-SERVE  

DATED: January 24, 2025.

Respectfully submitted,

s/ *Preston Berman*  
PRESTON BERMAN  
2600 Center St. NE  
Salem, OR 97301-2669  
Telephone: (503) 947-2704  

Plaintiff, appearing Pro Se

PAGE 1 - CERTIFICATE OF SERVICE